FILED

2013 SEP 19 PM 2:52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2012 Grand Jury

UNITED STATES OF AMERICA,           )   CR No. CR13-0666
                                    )
               Plaintiff,           )   I N D I C T M E N T
                                    )
          v.                        )   [18 U.S.C. § 1347: Health Care
                                    )   Fraud; 18 U.S.C. § 2(b):
VALERY BOGOMOLNY,                   )   Causing an Act to be Done]
                                    )
               Defendant.           )
_____)

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. §§ 1347 and 2(b)]

A.   INTRODUCTORY ALLEGATIONS

1.   Between in or around November 1994 and in or around October 2009, defendant VALERY BOGOMOLNY ("BOGOMOLNY") was the Owner and President of Royal Medical Supply ("Royal"), a supplier of durable medical equipment ("DME"), primarily back braces, knee braces, and power wheelchairs ("PWCs"), located in Los Angeles, California, within the Central District of California.

2.   On or about December 8, 1994, defendant BOGOMOLNY executed and submitted an application to Medicare to obtain a Medicare provider number for Royal.

3.   In or around 1997, defendant BOGOMOLNY opened a corporate bank account for Royal at Citibank, account number xxxx6974 (the "Royal Bank Account").  Defendant BOGOMOLNY maintained primary control of this account.

4.   On or about March 15, 2007, defendant BOGOMOLNY executed and submitted an electronic funds transfer agreement ("EFT") to Medicare requesting that all future reimbursements from Medicare be directly deposited into the Royal Bank Account.

5.   Between on or about January 1, 2006, and on or about October 28, 2009, Royal submitted to Medicare claims totaling approximately $4,074,490 for DME, primarily back braces, knee braces, and PWCs, and Medicare paid Royal approximately $2,742,328 on those claims.

The Medicare Program

At all times relevant to this Indictment:

6.   Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

7.   CMS contracted with private insurance companies to (a) certify DME providers for participation in the Medicare program and monitor their compliance with Medicare standards; (b) process

1  and pay claims; and (c) perform program safeguard functions, such

2  as identifying and reviewing suspect claims.

3      8.    Individuals who qualified for Medicare benefits were

4  referred to as Medicare "beneficiaries."   Each Medicare

5  beneficiary was given a Health Identification Card containing a

6  unique identification number ("HICN").

7      9.    DME companies, physicians, and other health care

8  providers that provided medical services that were reimbursed by

9  Medicare were referred to as Medicare "providers."

10     10.   To obtain payment from Medicare, a DME company first

11 had to apply for and obtain a provider number.   By signing the

12 provider application, the DME company agreed to abide by Medicare

13 rules and regulations, including the Anti-Kickback Statute (42

14 U.S.C. § 1320a-7b(b)), which, among other things, prohibits the

15 payment of kickbacks or bribes for the referral of Medicare

16 beneficiaries for any item or service for which payment may be

17 made by Medicare.

18     11.   If Medicare approved a DME company's application,

19 Medicare would assign the provider a Medicare provider number,

20 enabling the DME company to submit claims to Medicare for

21 services and supplies provided to Medicare beneficiaries.

22     12.   To obtain and maintain their Medicare provider number

23 billing privileges, DME suppliers had to meet Medicare standards

24 for participation.   The Medicare contractor responsible for

25 evaluating and certifying DME providers' compliance with these

26 standards was Palmetto GBA ("Palmetto").

27     13.   From in or about October 2006 through the date of this

28

1  Indictment, Noridian Administrative Services ("Noridian")

2  processed and paid Medicare DME claims in Southern California.

3       14.  To bill Medicare for DME it provided to a beneficiary,

4  a DME provider was required to submit a claim (Form 1500). .

5  Medicare required claims to be truthful, complete, and not

6  misleading.  In addition, when a claim was submitted, the

7  provider was required to certify that the services or supplies

8  covered by the claim were medically necessary.

9       15.  Most DME providers, including Royal, submitted their

10  claims electronically pursuant to an agreement with Medicare that

11  they would submit claims that were accurate, complete, and

12  truthful.

13      16.  Medicare required a claim for payment to set forth,

14  among other things, the beneficiary's name and HICN, the type of

15  DME provided to the beneficiary, the date the DME was provided,

16  and the name and unique physician identification number ("UPIN")

17  or national provider identifier ("NPI") of the physician who

18  prescribed or ordered the DME.

19      17.  Medicare paid DME providers only for DME that was

20  medically necessary to the treatment of a beneficiary's illness

21  or injury, was prescribed by a beneficiary's physician, and was

22  provided in accordance with Medicare regulations and guidelines

23  that governed whether a particular item or service would be paid

24  by Medicare.

25  B.   THE SCHEME TO DEFRAUD

26      18.  Beginning on or about January 1, 2006, and continuing

27  through in or around October 2009, in Los Angeles County, within

28  the Central District of California, and elsewhere, defendant

1  BOGOMOLNY, together with others known and unknown to the Grand

2  Jury, knowingly, willfully, and with intent to defraud, executed,

3  and attempted to execute, a scheme and artifice: (a) to defraud a

4  health care benefit program, namely Medicare, as to material

5  matters in connection with the delivery of and payment for health

6  care benefits, items, and services; and (b) to obtain money from

7  Medicare by means of material false and fraudulent pretenses and

8  representations and the concealment of material facts in

9  connection with the delivery of and payment for health care

10 benefits, items, and services.

11 C.    MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

12      19.   The fraudulent scheme operated, in substance, as

13 follows:

14      a.    Defendant BOGOMOLNY obtained Medicare beneficiary

15 information through various means for the purpose of using that

16 information to submit, and cause the submission of, claims to

17 Medicare on behalf of Royal.  These claims were for DME that was

18 not medically necessary and at times was not provided to the

19 beneficiaries.

20      b.    Defendant BOGOMOLNY obtained prescriptions for

21 DME, primarily back braces, knee braces, and PWCs, purportedly

22 ordered by doctors.  These doctors were not the primary care

23 physicians for the beneficiaries, and some of the doctors did not

24 know that their provider numbers were being used to prescribe

25 DME.

26      c.    Defendant BOGOMOLNY delivered, or caused to be

27 delivered, DME to some of the Medicare beneficiaries, knowing

28 that those beneficiaries did not medically need the DME.  For

1 other beneficiaries, defendant BOGOMOLNY either failed to deliver

2 any DME or delivered only a portion of the DME for which Royal

3 billed Medicare.

4        d. Defendant BOGOMOLNY created false and fraudulent

5 documentation to support Royal's purported delivery of DME to

6 beneficiaries, even though, as defendant BOGOMOLNY then well

7 knew, some of the beneficiaries did not receive any DME or

8 received only a portion of the DME that was documented in the

9 patient files.

10        e. Defendant BOGOMOLNY then submitted, and caused the

11 submission of, false and fraudulent claims to Medicare for DME,

12 including back braces, knee braces, and PWCs, that Royal

13 purportedly provided to Medicare beneficiaries, knowing that the

14 beneficiaries did not have a medical need for the DME and that

15 some beneficiaries did not receive the DME for which Royal billed

16 Medicare.

17        f. As a result of the submission of false and

18 fraudulent claims, Medicare made payments to the Royal Bank

19 Account, which defendant BOGOMOLNY controlled.

20        g. Defendant BOGOMOLNY then transferred and disbursed

21 monies from the Royal Bank Account to himself and others, and

22 withdrew large amounts of money in cash.

23 D.   THE EXECUTIONS OF THE FRAUDULENT SCHEME

24     20. On or about the dates set forth below, within the

25 Central District of California and elsewhere, defendant

26 BOGOMOLNY, together with others known and unknown to the Grand

27 Jury, for the purpose of executing and attempting to execute the

28 fraudulent scheme described above, knowingly and willfully caused

to be submitted to Medicare for payment the following false and fraudulent claims purportedly for DME:

| COUNT | BENEFICIARY | CLAIM NUMBER | DATED CLAIM SUBMITTED | AMOUNT CLAIMED |
|-------|-------------|--------------|-----------------------|----------------|
| ONE | M.R. | 109021804534000 | 1/21/2009 | $2,233.00 |
| TWO | A.C. | 109021804525000 | 1/21/2009 | $5,640.00 |
| THREE | M.H. | 109035818011000 | 2/04/2009 | $5,865.00 |
| FOUR | S.G. | 109083852400000 | 3/24/2009 | $5,765.00 |
| FIVE | S.P | 109128839675000 | 5/8/2009 | $1,300.00 |

///

///

///

| COUNT | BENEFICIARY | CLAIM NUMBER | DATED CLAIM SUBMITTED | AMOUNT CLAIMED |
|-------|-------------|--------------|------------------------|----------------|
| SIX | K.B. | 109212831225000 | 7/31/2009 | $974.00 |

A TRUE BILL

/s/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

BENJAMIN D. SINGER
Deputy Chief, Fraud Section
United States Department of Justice

O. BENTON CURTIS, III
Assistant Chief, Fraud Section
United States Department of Justice

FRED MEDICK
Trial Attorney, Fraud Section
United States Department of Justice